May it please the Court, Robert Jeistet for Appellee Cross Appellants, American Tower and T-Mobile West Corporation. Because this is a cross appeal, I feel comfortable beginning the argument. Before I begin, though, my colleague, Mr. Qualibam, is here to defend the District Court's decision on the Permit Streamlining Act, or PSA. So we'd like to hear from the City first. I think that was the main appeal. No problem. All right. Thank you. Good morning, Your Honors. May it please the Court. I'm Christine Leone, Chief Deputy City Attorney representing the City Attorney's Office. Also with me today is Deputy City Attorney Alexis Jodlowski. She won't be sharing in the argument, but will hopefully assist me if I need it. I want to give her credit for being here. Thank you, Your Honor. The City's position is that the District Court erred when determining that the Bickle case was controlling over the Mahone case, when deciding that the permits that issue in this case were deemed approved by operation of law. The City's position is that the Mahone court is the controlling authority. There's no divergence of authority because Bickle did not address what are the contents of a public notice when it's required to be deemed approved by operation of law. Why is the question of what the Court of Appeals said in Mahone, even at issue here since American Tower never gave notice? It never offered its own notice. It has a self-help remedy under 956B. Right. And it never issued notice. It never took advantage of that. So why is any of this even – why is Mahone even of any interest to us? Well, because I think the way the District Court and American Tower Corporation proposed that you determine whether a permit is deemed approved is simply if the City is the party to give notice, which happened in this case, then the permit becomes deemed approved simply by passage of time, whether or not the deemed approved remedy consequences in the public notice. And the Mahone case said that it's required by – There are no – I'm sorry. Go ahead. The thing I'm confused about in the briefing here, and I guess I can ask it by asking it directly, setting aside the exhaustion question, okay, if the City's notice did not have the 60-day thing, okay, and if it were decided here – you don't have to concede it – if it were decided that the City's notice doesn't have to have that provision in it at all, okay, is the City conceding then that the permit decision was untimely? No. That's the only issue you've raised in front of us. You said, well, we win because this thing should have been in the notice. But you don't seem to be saying to us who cares if it's in the notice or not. The decision was timely. Why not? I'm trying to understand why that's not – essentially along the lines of, why isn't it a big so what, whether that was in there or not, if the decision was timely anyway? Well, under the Mahone case, under the Permit Streamlining Act, there's a specific provision that says if after an environmental determination here, the exemption, a project has to be approved within the 60 days of that time. Correct. If it's not, it's deemed approved. Yes. Unless public notice required by law is put in that notice. Yes. And our position is – I understand that. That public notice was not required by – was not noticed, and so you can't have it deemed approved under the Permit Streamlining Act. I don't understand your reading of the PSA. I don't understand what you just said. The PSA 956B says that it's deemed approved. Then the next sentence says, however, you have to have all of the notices required by law. And that phrase is in passive voice, which suggests that it applies to whomever it applies to. The legislature was not specific as to from whom those notices had to be given. It then provides a self-help for applicants when you've got a government that is – or a government agency that is not behaving well. But it is also apparent, or it would seem to be, that that however clause would also – also means that it's only deemed approved if the government agency has given the notices that it is required to give. Well, I think the Mahon case interpreted that differently, which we believe is the authority. It says it can only be deemed approved if the public agency gives the notice in the notice to the public that if we don't act within 60 days – Right. But the important part of the Mahon case is that it did say that that phrase, the however phrase, applies to the notice that is required to be given by the government, by law, whatever the source of the law is. So the San Diego Municipal Code says that for a process-free application that you must have a notice and a hearing, right? Yes. Okay. Is that the notice then required by law? No. That is the notice provided by law under the statutory construction of the San Diego Municipal Code. Under the California Permit Streamlining Act, the Mahon case has determined that public notice required by law, which is a legal phrase that is used in that statute. Term of art. Term of art, thank you. That requires that it gives notice. The Mahon specifically said that the public notice is to warn the public that if action is not taken within a certain amount of time, that that permit can be deemed approved. And that is the deemed approved warning. It's not the deemed approved. It's not the warning of the project, the notice of the project, which is required under the San Diego Municipal Code. Well, that's why I asked you, Consul, assuming we say you're wrong about that. It doesn't have to have that particular provision in it, assuming we say that. Right. Are you finished? Is that the end? Are you saying that we didn't give the notice required by law then? Under the Permit Streamlining Act. I believe we gave the notice required under our municipal code. Okay. And if the notice required in your municipal code were sufficient, I remember I just said, assuming that you don't have to have that thing in there, so put your mind into my world, okay, assuming that doesn't have to be in there, and you gave the notice in the municipal code, did you then hold your, make your final decision or make your decision, whatever you think your decision is, within the time provided? No. So if you, if it's not for that requirement, if that doesn't have to be in there, then you lose. Is that right? In the city's notice, as is prevented. Yes, under the Mahone case. I mean, under, if you don't believe that Mahone requires the public notice and the warning in the city's notice as well, or I think Mahone was simply saying. Yes, we assume it doesn't mean that. Somebody's noticed, yes. If we don't follow Mahone, then, I mean, I suppose I would make the same argument if Mahone wasn't there, that the requirement is, all the other cases, the Chiani case, the Selinger case, the legislative history talks about providing due process to third parties. In this particular case, and if we apply it to this case. Will you please come into my world for a second? You keep wanting to argue the same thing, and I'm trying to understand what it is that's in front of us today, and it's really important. So stop going back and arguing about that provision, that thing has to be in there. I just told you it doesn't have to be in there, okay? Now, if it does not have to be in there at all, what's your position in terms of whether you gave the proper notice? Whether you gave the notice required by law, and never mind that, you did give it then, right? You gave the notice required by law in that case, is that correct? Under the San Diego Municipal Code. Under my theory. Yes. Yes? Yes. Okay. Did you then act timely, in a timely fashion after giving that notice? That's my question to you. Under the Permit Streamlining Act? No. We did not make a decision within 60 days of the exemption. I feel like I'm not answering your question. But didn't you act within 60 days of giving the notice required by law? Didn't you act within 60 days of giving the notice required by the San Diego Municipal Code? A decision? Yes. Not in all the cases. Well, okay, maybe you could help me. I got versus that the notice of the hearing was issued on March 20th, 2007. The decision was April 4th. That was 15 days later. For Border, the notice and the hearing was held on July 18th. The decision was issued on September 12th. That would be 56 days later. The same with Mission. That seems like you complied. It's the notice. Now I understand. The time start is triggered in this particular case once the exemption is issued. That's CEQA. That's right. But you're clearly well past that. And you have to give notice required by law. Now, you've told me that you thought the required by law was a very narrow term. And I'm very curious as to why the required by law isn't the notice required by all the laws, including the San Diego Municipal Code and the due process clause of the 14th Amendment, whatever due process clause there is in the California Constitution. Well, I think it is a bit different. I think that the amendment to the code to address the due process issues when there may be a deemed approved made that statement different, requiring a warning that if there's inaction, that this permit can be deemed approved. But you're not saying, are you, that the San Diego Municipal Code supersedes the state streamlining act? No. I mean, I think they coexist. I mean, we have notice provisions, and it rarely comes up. I think it's just the idea of if you think you can have a permit deemed approved, then you must meet the requirements in that statutory scheme and the cases that are interpreted and the policy behind the legislation. Right. But if the notice requirements in the San Diego Code conflict with the notice requirements in the Streamlining Act, the code has to give way to the state legislature, right? Yeah. I don't think there's a conflict, though. I think it's an added provision, which is what this statute meant to do, to add a provision to require notice if a permit is going to be deemed approved. The state legislature was concerned about the delay in the permitting process. So we know that the intent of the state legislature was to move the permits along, not to permit the municipalities to build in more delay. So any interpretation that we have that would allow more built-in delay would be contrary to the purpose of the statute. Well, I think the legislative history also and the subsequent case law address that the due process issued with that issue. I mean, particularly in this case, in two of the permits, this permit would have been deemed by operational law before a notice or before a hearing was even had. And I think when it went back after the Palmer case and came to the decision we're talking about now, before any public had to be warned, they specifically adjusted and revised that provision under Palmer, and Selinger identified the fact that there are due process issues. If you deem a project approved without giving notice to the public within the notice, that this permit can be deemed by operational law. Let me ask a little different question. As you stand here today, then, on your view, the city has never yet given the notice required by law. Ergo, actually, its decisions are really something like rump decisions. Is that correct? Because they've never given the notice required by law. So how could they possibly hold their hearing without the notice required by law, et cetera? Because the notice required by the San Diego Municipal Code is different than under the Permit Streamlining Act. Of course, but you're arguing to us that the reason you're not stuck with a time problem is that they never gave the notice required by law, which requires this provision to be in there, correct? That's your position, right? In order for a permit to be deemed. For a proper notice, this provision has to be in there. That's your position, correct? It's not for a proper notice. It's to be able to take the remedy of a deemed approved permit. Exactly. All of these. Yes, exactly. Well, but it's different. The ability to move forward with a hearing, a project in a hearing and make a decision, it does. It happens every day. Dozens of permits and hundreds every year. But in this case, if you want to have the remedy, allowed by the statute under the Permit Streamlining Act, to have a permit deemed approved before anybody has looked at the evidence and anybody's made a decision just as a passage of time, you have to provide notice to the public that that is a consequence of an inaction. Who is you? Well, in this case, it's either going to be the city who is ever providing notice. So your position would be the cities can completely short-circuit this whole act by never putting that notice in, unless, of course, the other people are smart enough to do it. But if the city gives notice and holds its hearing and never puts a provision in, due process aside, nobody cares about that much. If the city does that and holds its hearing and doesn't give the notice to the public that's required by law, the city can go ahead and make its decision and the act can just go double. Is that the idea? Well, I don't think so. I mean, I think the case is addressed that this is a pretty significant deal, to have a permit approved before the findings have been made by law and before a community can show up and discuss it. But I think one of the things, I've been doing land use my entire career and I'm chief of the Land Use Litigation Unit, and I generally, every day, I deal with the permit process in every aspect. And I can tell you that builders don't want that provision inside these notices. I don't care what builders want. The question is what the law wants. Yeah, but I'm asking. You're telling me, and so your view is, so the city just say, well, we see under the cases and under the statute we're supposed to put this notice in there, but we don't do it. Ha-ha. That'll take care of that. Is that correct? But we're not supposed to. It didn't require the city to do it. But if somebody wants it. Projects take time. Developers work with cities collaboratively. You know, sometimes projects take months or years, and they want to work together. So this is not something that developers or people in permit applications want the city to have because they can work together to get projects approved. I want to follow up on Judge Fernandez's question and ask you a variation on that. So under the San Diego Municipal Code for a project of this scope, San Diego is required by its own code not only to provide notice but to provide a hearing. Okay? Now, if you had given notice of the deemed approved provision and then had not acted in time, you could have short-circuited the right of the public to have a hearing. Is that right? Well, it would have given the public notice. So they could have done one of two things. They could have, if they didn't act in time, they could have appealed the deemed approval that was set forth in Shawnee. Or they could have, if they have notice and somebody is nearby a project, they get these notices all the time. I get them. I look at them. They could have said, I haven't gotten notice of the hearing. They could have called the city up. I mean, it gives the public the notice to take the remedies that they have the right to address, either appealing a deemed approval or calling the city and say, why haven't I seen a hearing posted? This is going to affect my property and my land. But it doesn't tell them if the city doesn't act, you don't, it will get approved automatically, right? It doesn't tell them that. It's supposed to. That's the very point. So when somebody gets that. But it does create the possibility of collusion between the developer and the city. That is that you can simply avoid holding the hearing at all by giving the notice, by the city giving the notice, with the deemed approval language in there, and then not holding the hearing or setting the hearing for far enough out. And if somebody doesn't react quickly, you have, there's been collusion there. The project gets approved and nobody ever had a hearing. Well, I think the notice gives the ability for the people to decide what their due process rights are and what they want to object to. I mean, I don't necessarily know I've ever run across a case where there's been collusion between a city and a developer to not get something approved. Because I just think this issue, this law has never been applied as it was in the district court. And the California League of Cities has set forth, the entire development community of California has acted upon what Mahone has said in the law. So these issues have never come up. Do you think it might be worthwhile to certify this issue to the California Supreme Court? I do now. I mean, the reason why we, I definitely looked at the issue. But, you know, to us it seems so clear that Mahone as an appellate authority was, I mean, the issue, I mean, in that case is the exact issue we have in front of us. So I think that because it's such an important issue to California and cities, the entire development community, that it may make sense to have the California Supreme Court address the issue. Did you want to save time for rebuttal? Yes, I don't know that I have much time, but whatever I have left. All right, thank you. Thank you. Not so eager after all. Good morning, Your Honors. May it please the Court. Julian Quattlebaum, Channel Law Group for Plaintiff Appellee and Cross-Appellant of American Tower Corporation. I would like to start my argument today by reading the first two sentences from the city's statement of the issues presented in this case, which are identical in both of their two opening briefs. The California Permit Streamlining Act requires the public agency to approve or disapprove a development permit within 60 days from the determination by the lead agency that the project is exempt from the California Environmental Quality Act. If the lead agency does not act to approve or disapprove the development project within the statutory period, the permits are deemed approved by operation of law. The analysis in this case starts with the undisputed fact that the city did not act to approve or disapprove the permits within 60 days from the city's determination that the projects were exempt from CEQA. There is no dispute about the fact that the city violated the Permit Streamlining Act. The dispute is whether or not American Tower is entitled to a remedy. Nor is there any dispute, as counsel for the city has just acknowledged, that the city. Counsel, was it in your client's interest for them to decide this question within 60 days? Yes. Wasn't it pretty clear that if they had decided within 60 days of certifying that CEQA was not applicable, that they would have turned down your application? It depends on what the evidence that was presented. Wasn't it pretty clear at the time that your client was going to lose if they did it within 60 days? And so you were happy to have, your client was happy to have them extend it and try and negotiate this thing out? No, that's not true at all, Your Honor, because we wanted to get a decision so that if necessary, we could go to court and challenge the decision under Federal law. And if you wanted a decision quickly, then why didn't you exercise any of your self-help rights? You had two self-help rights. 956A would have given you a right to go in for what's the equivalent of a writ of mandamus. 956B would have given you the self-help right to go ahead and start the process by issuing your own notice, and you didn't take advantage of either one of those things. Because the city gave notice. We didn't need that self-help because the city actually did give notice, and it was the notice required by law, not only their municipal code, but it was completely in accord with the state law that sets forth what the requirements with respect to information in a public notice on a land development hearing are. And it complied with both the state and the local – the state law and the local ordinance. Which notice was that? They gave a series of notices. Yeah. As early as December 2nd of – excuse me, as early as December 16th of 2005, they gave notice of the applications for the border and Buras facility. That's the notice that the application was filed, right? The application is complete. Right. Right. The CEQA, at least for Buras, wasn't issued – the CEQA exemption wasn't issued until January 13th. Isn't that what starts the clock? That's what starts the clock. That is correct. Okay. So they had 60 days from there to make the decision. Right. Okay. So where's the notice that they gave? Which facility? Let's focus on Buras. Buras. The notice of the project, the notice of the application, was given on December 16th. Right. That's the application. But the critical date is the Buras CEQA exemption. The CEQA exemption was – determination was made on January 13th of 2006. Right. Isn't that the next notice that has to be given, the notice of public hearing? It doesn't say that the notice of public hearing has to be given. It says the notice required by law. And so the notice – you're saying that the notice required by law was the one that was given on December 16th, so they had to – the 60-day clock started before they even issued the CEQA exemption? I don't understand that at all. Your Honor, the date of the notice has nothing to do with the 60-day period. The 60-day period is measured exclusively from the date of the CEQA determination. Right. Isn't – isn't – The date of the notice has nothing to do with when the time period starts to run. How do you read the phrase, the permit shall be deemed approved only if the public notice required by law occurred? Then – then – Which notice do you think that is? Well, it – I will concede that it is probably both notices to the extent that – Give us a date. All right. Which notice do you think – The Buras – Which notice do you think complies with that sentence? The last notice required by law for Buras was given on March 20th of 2007. Right. Which is more than 60 days after the CEQA exemption notice was given. That's right. So at that point, according to your theory, you've already won. That's correct, Your Honor. You've won before they even gave that notice. So why didn't you simply declare that it was done and not even go to proceed to the hearing? Why bother? We – as so often happens, we want to go through the process and give them a chance to suggest aesthetic mitigation measures. In your appeal to the planning commission taken in June of 2007, did you tell them that it was deemed approved then? Did you tell the planning commission it was deemed approved? We had filed a complaint in March 2nd of 2006, which specifically referred to the deemed approved provisions of the Permit Streamlining Act. We had already raised the issue in court. Let me go back now. You say the notice required by law was the notice of hearing that they gave on November 20th? That is a notice required by law. I'm not sure there is the notice. Thank you. Okay, that's a notice required by law. But you told me a moment ago that that did have to be given. I believe it did. I think that's appropriate. That's a notice that they're going to have a hearing. Is that correct? That is correct. And your position before us is that the law requires them to give that notice, but it's worthless, because obviously it was just approved, because they gave the notice they're going to have a hearing. Ergo, it's automatically approved. That's your position. Is that right? That's the way the statute reads, Your Honor. That's your position and that's what it says. Is that correct? That is what the statute says, Your Honor. And you rise and fall on this appeal based upon that question. I think if you look at the facts of this case, that there actually was an opportunity to be heard as well. Before ---- Wait a second. You told me that they gave a notice, the notice required by law to the public, was given on November 20th, 2007, saying we're going to have a hearing on Date X. Correct? Yes. You're saying, but that hearing is just a lot of nonsense. It's window dressing because it's already been approved as of November 20th, 2007. That's your position. I can understand, Your Honor's concerns about ---- It's not a concern. I'm asking you a question. Is that your position? Never mind my concerns. They don't matter. It is our position that that's what the statute says. Whether that is the correct answer on due process grounds ---- I didn't ask you what the statute said. I asked you, is it your position that having given that notice, your ---- No, Your Honor, I think our position ---- Your application was deemed approved. Is that correct or wrong? Our position, to be fair, is that I do believe that the public needs a reasonable opportunity to be heard, notwithstanding the strict language of the statute. All right. Then so November 20th, 2007 hasn't given them the opportunity yet, so that wasn't the date of approval. When do you think your ---- Well, but actually, Your Honor, given that there was a notice of the project given back in late 2005, there was notice and an opportunity to be heard. So you're combining all of the notices together to make your argument that the application was deemed approved at a later point in time? Yes, because the intent of the legislation was to address the due process concerns that were raised by the Palmer decision. On what precise date? Let me take Veris again. On what date was your Veris application deemed approved by an operation of law? March 14th, 2006. March 14th, 2006, which would be 60 days after the Veris notice of application was issued by the city. Right. Or at the very latest, the date of the subsequent. If you wanted to take a very literal view, then the date that the subsequent notice of the hearing was issued. Sixty days from that? No, no, no. Sixty days from the CEQA determination or the date of the notice, whichever is later. What date? You mean the November 20th, 2007 date. Is that correct? Veris? No. It would have been the March 20th, 2007 date. Excuse me. I get that wrong. The March 20th, 2007. That would be the date that you say is deemed approved, correct? Yes, Your Honor. At the latest. At the latest. And the fact, yes, indeed, and the fact that they gave at that point, they gave notice of this public hearing that they were going to hold to the public, that's just, that's just eyewash. That doesn't matter. Because that's irrelevant. It's irrelevant to the fact that whatever went on in that hearing, you deem it approved as of March 20th, 2007. Is that correct? Yes, Your Honor. And if you lose that point, if we say that's nuts, that's not true, then your case goes away? This part of your case goes away? No, Your Honor. I don't think so. Then what's your position? Because the Court can conclude that it was either the date that was 60 days after the CEQA determination, which prior to which. You lose. We don't say that. We say, we say the magic, if we say this. Remember, it's not necessarily what you're saying. No, I understand. I do. All right. If we say no, March 20th, 2007 is the first date that the notice of the public hearing was given. Now, in your view, at least by that moment, you were approved, right? Yes, Your Honor. Regardless of what the silly public hearing said, correct? Yes, Your Honor, because. And if you lose that point, if we say nope, it isn't your first date and it's not your second date, it's not November 20th, 2007, are you done? No. No. Okay. Then what is the date then? It's neither of those. Well, it would be a reasonable period of time after the notice was given. Which notice? Which notice? The March 20th notice? But that would be required not by the statute but by due process. By the way, the March 20th notice? I believe it should be that that shouldn't even really be relevant, because the concern here. We just said it is relevant, okay? All right. For our purposes, hypothetically, if that's the notice date and they have to do something within a reasonable time after that date, did they? No. They didn't do it within a reasonable time after March 20th? No, they did not. Because they didn't have their hearing until what date? They took action on April 4th. So from March 20th to April 4th is not a reasonable time for the public hearing, is that correct? It affords more than reasonable opportunity to be heard by anyone who is concerned, any adjacent landowner. How many days is that? About two weeks, roughly? Yes, Your Honor. So two weeks would be an unreasonable. How soon, in your view, did the hearing have to be held to be reasonable? The question is whether due process requires it. Precisely. In terms of due process, after March 20th, 2007, on March 20th, the public is told, finally is told, we're going to hold a hearing about this application. In your view, you say April 4th was just too long, that's not reasonable. How soon after March 20th did they have to hold it to make the public have due process notice? Well, in a number of cases, hearings are not even required by due process. I didn't ask you that question. If a public hearing, if some kind of hearing or some kind of public action was required, how soon did the public have to react after March 20th, in your view? I would say immediately. By March 21st, you mean? Give them three business days. Three business days. The San Diego code requires ten days' notice. And so the San Diego municipal code that governs all of this is irrelevant? The Permit Streamlining Act, which is state law, does not require a hearing at all. Okay. Well, but it refers to public notices and hearings that may be required by law. In fact, in 956A, it says if any provision of law requires an agency to provide public notice or a hearing or both. Now, does any law include the municipal code that governs signal towers in San Diego? Does that override state law? I don't believe it does. Well, if that's all overridden, then you've just lost all of the San Diego municipal code that governs all the substantive law in this area. To the extent that it's inconsistent with state law, yes. Well, it seems to me that it's been incorporated by state law, not made inconsistent. I don't see how the PSA has preempted all of that. I don't see how it could. You don't see how a state law could preempt? I understand preemption, counsel. I promise I understand preemption. I'm sure you do. But I don't see how in this case the PSA has intended to preempt all of the substantive law that governs, for example, signal towers, because the PSA is not directed to signal towers. It's directed to all kinds of things. Yes, Your Honor, and it was the legislature's intent that local jurisdictions not be able to place impediments. What does 956A mean when it says if any provision of law? Only any provision of law in the PSA? If any provision of law not including municipal codes? When the legislature explicitly says the project is deemed approved, provided the public notice required by law has been given. That was clearly intended to mean that the hearings that might otherwise be required by law were no longer required, as were compliance with the zoning code, because the city did not do what it was supposed to do. Wait a minute. I'm sorry. I'm still trying to figure out what 956A means when it says if any provision of law requires public notice or a public hearing or both. Now, what does any provision of law mean? Any provision of law excluding municipal code? No, Your Honor, but that only deals with when an applicant can take one of the two steps there. That doesn't – that particular phrase does not deal with deemed approval. That's correct, because A is the mandamus provision. But when we then come down to B in the same section that says the public notice required by law, what law is requiring that notice? I agree with you that that is both State and local law. Okay. And local law in this case for the quality of your project required not only notice, it also required a hearing. Right. But that provision in B does not refer to a hearing. It did in an earlier draft of the legislation. That requirement for a hearing as well as public notice was removed. All right. We'll move to 956D. Nothing in this section shall diminish the permitting agency's legal responsibility to provide where applicable public notice and hearing before acting on a permit application. They're still responsible. But that doesn't mean that the permit is not deemed approved. If – the one point I really want to make is that Beres is the only one of these three facilities where that's an issue. There was, in both of the other ones, a properly noticed hearing held at which the city did not make a decision. I'm sorry. The city did not make a decision in border admission? They did not. Not at that first hearing. Were you going to address the cross-appeal at all? No. My partner, Mr. Geistad, was going to address that. All right. Let's hear the cross-appeal, please. Thank you, Your Honor. May it please the Court, Robert Geistad, for plaintiff appellee and cross-appellant, American Tower and T-Mobile Corporation. Obviously, if this Court upholds the district court's action on the PSA, then the rest of these claims are moved and they don't need to be decided. The case will be decided on the PSA. In the event that is not the case, we are asking that the Court either reverse the district court's decision on the Telecommunications Act, Equal Protection, and Vesta Rice claims, or at least remand the case back to the district court for reconsideration because of the large volume of evidence that existed in the record and that the district court did not consider in its decisions. With regard to American Towers and T-Mobile's substantial evidence claim, the Court failed to consider numerous indicators in the record that the city applied the wrong standard and the decision, therefore, was not properly based on local law. There's no question that the city expected these sites to be removed and replaced with minor telecommunication facilities. That effort is apparent from commission and council discussion and motions and is entirely inconsistent with the Code's separate classification of major and minor telecommunication facilities. That error is apparent even in the denial resolutions. If a facility is a major telecom facility that, by definition, cannot be concealed, because if it can be concealed, it becomes under the Code a minor telecommunication facility, then the fact that a site happens to be visible cannot alone qualify as substantial evidence in support of denial. In the resolutions, the primary evidence supporting the city's denial was that a given site, whether it was Verus or Border or Mission Valley, was visible. Verus was, quote, unquote, unsightly because it could be seen from the freeway. Mission Valley constituted a visual blight because it was visible from the I-805 and Interstate 8 freeways. Border had significant visual impact because it could be seen from the north and south lanes of Interstate 805. That was the evidence in the resolution in support of denial. And yet these were identified as major telecommunication facilities, which could not be defined by the fact that they were visible. MS. Our counsel, could you wrap up, please? MR. Sure. I just simply would like to say that with regard to the unreasonable discrimination claim, the analysis is wrong and that the court should have considered structure placement and cumulative impact in terms of whether the facilities are similarly situated, should have considered something other than technical particularities with regard to whether the services were functionally equivalent. Those determinations should not have been based on the content of the communication, i.e., emergency versus non-emergency. And with regard to the remaining claims, I simply would ask that this court consider remand back to the district court for a reconsideration of the entire body of evidence in front of the court. MS. All right. Thank you, counsel. Rebuttal. MS. And I just want to address one of the issues that was just brought up, and it's whether the wrong law was applied. The statement is based upon an incomplete statement of the law that is under the San Diego Municipal Code. Essentially the argument is that because the city used concealed or integrated within these hearings that somehow that means they must have been applying the minor facilities. If you look at Government Code 1410405F, it specifically states that under major facilities, F1, that major facilities cannot be in places where there are view sheds of designated state highways or within one-half mile of another major telecommunications facility unless that facility is concealed from public view or integrated into the architecture or surrounding environment, unique design solutions, and accessory uses. That is the identical framework and explanation in the minor facilities for places in specific areas. Two of these facilities fall under that. It's cited in our brief they fall under that criteria. So the idea that the district court relied upon and the administrative body spoke about those design criteria was acceptable and they were following the regulations. Thank you. Thank you to both counsel.
judges: Fernandez, Rawlinson, Bybee